**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

---

**CHRISTOPHER GOODVINE,**
**Plaintiff,**

**v.** **Case No. 06-C-862**

**MARY GORSKE, DR. CHARLES LARSON,**
**CAPTAIN SCHUELER, BELINDA SCHRUBBE,**
**MIKE THURMER, PHIL KINGSTON,**
**CYNTHIA THORPE, JIM GREER,**
**BUREAU OF HEALTH SERVICES,**
**STEVE CASPERSON, MATTHEW J. FRANK,**
**GOVERNOR JAMES DOYLE,**
**NURSE GAIL WALTZ, and BRUCE A. SIEDSCHLAG,**
**Defendants.**

---

## DECISION AND ORDER

Plaintiff Christopher Goodvine, who is currently incarcerated at Columbia Correctional Institution, filed this pro se civil rights complaint pursuant to 42 U.S.C. § 1983. This matter comes before the court on plaintiff's motion for leave to proceed in forma pauperis and motion for temporary restraining order.

## I. MOTION TO PROCEED IN FORMA PAUPERIS

Pursuant to 28 U.S.C. § 1915(b)(1), plaintiff is required to pay the statutory filing fee of $350.00 for this action. If a prisoner does not have the money to pay the filing fee, he or she can request leave to proceed in forma pauperis. To proceed with an action in forma pauperis, the prisoner must complete a petition and affidavit to proceed in forma pauperis and return it to the court with a certified copy of the prisoner's trust account statement showing transactions for the prior six months. The court then assesses and, when funds exist, collects from the plaintiff at the time the action is filed an initial partial filing fee of 20%

of the average monthly deposits to or the average monthly balance in the prisoner's trust account for the six-month period immediately preceding the filing of the complaint.[1]

In this case, plaintiff has filed a certified copy of his prison trust account statement for the six-month period immediately preceding the filing of his complaint. The prisoner has been assessed and paid an initial partial filing fee of $9.88.[2] Thus, his motion for leave to proceed in forma pauperis will be granted.

## II. SCREENING

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Denton v. Hernandez, 504 U.S. 25, 31 (1992); Neitzke v. Williams, 490 U.S. 319, 325 (1989); Hutchinson ex rel. Baker v. Spink, 126 F.3d 895, 900 (7th Cir. 1997). The court may, therefore, dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. “Malicious,” although sometimes treated as a synonym for “frivolous,” “is more usefully

---

[1] In no event will a prisoner be prohibited from bringing a civil action because he or she has no assets and no means by which to pay the initial partial filing fee. 28 U.S.C. § 1915(b)(4).

[2] To date, plaintiff has paid $20.00 of the $350.00 filing fee.

construed as intended to harass." Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003) (citations omitted).

A complaint, or portion thereof, should be dismissed for failure to state a claim upon which relief may be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim or claims that would entitle him to relief. See Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46 [1957]). In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor. Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

To state a claim for relief under 42 U.S.C. § 1983, plaintiffs must allege: 1) that they were deprived of a right secured by the Constitution or laws of the United States, and 2) that the deprivation was visited upon them by a person acting under color of state law. Gomez v. Toledo, 446 U.S. 635, 640 (1980). The court is obliged to give the plaintiff's pro se allegations, however inartfully pleaded, a liberal construction. See Haines v. Kerner, 404 U.S. 519, 520-21 (1972).

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." This statement must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (quoting Conley, 355 U.S. at 47); see also Thomson v. Washington, 362 F.3d 969, 970-71 (7th Cir. 2004) (no heightened pleading requirement for pro se prisoner civil rights complaint). Of course, if a complaint pleads facts that show that a plaintiff does not have

a claim, the complaint should be dismissed "without further ado." Thomson, 362 F.3d at 970.

**A. Facts and Background**

Plaintiff is currently incarcerated at Columbia Correctional Institution (CCI). (See Doc. # 8). However, he was housed at Waupun Correctional Institution (WCI) at all times relevant. (Compl. at 1). It appears that all defendants are employees of the State of Wisconsin, although the complaint does not explicitly state so. Id. at 1-3.

On February 16, 2006, Dr. Suliene (who is not a named defendant) diagnosed plaintiff with asthma. Id. at 8. Suliene prescribed plaintiff an Albuterol "rescue inhaler." Id. Suliene stated that in the future plaintiff could also require a corticosteroid inhaler. Id.

Thereafter, plaintiff was transferred to WCI. Id. On March 20, 2006, plaintiff submitted a Health Services Request form stating that his asthma was worsening and he was subsequently treated by Nurse Practitioner Gorske for breathing problems. Id. During their meeting, Gorske performed a "breathing test" on plaintiff and found no wheezing. Id. When Gorske asked plaintiff whether his rescue inhaler was helping, plaintiff acknowledged that it was but also indicated that the inhaler did not completely eliminate his breathing problems. Id. at 8-9.

On April 5, 2006, plaintiff "received via the prison mail route a memorandum demanding that he relinquish his Albuterol inhaler immediately." Id. Plaintiff reluctantly did so. Id. That same day, plaintiff sent letters to various prison officials notifying them that his inhaler had been seized and demanding its return. Id.

Nurse Gorske responded to plaintiff's inquiries and told him that his inhaler had been taken because he said that it was not improving his health. Id. She said she would re-

assess plaintiff "at the end of the month." Id. Plaintiff then wrote to Gorske stating that he would "go on a hunger-strike if he didn't receive his inhaler." Id. On April 10, 2006, Gorske came to the segregation unit to see plaintiff. Id. During this visit, Gorske informed plaintiff that his inhaler would be returned and that he would also be provided an anti-inflammatory inhaler as suggested by Dr. Suliene. Id. When plaintiff asked how soon he could get his inhaler, Gorske stated that he would probably get it before noon the next day. Id.

At approximately 1:30a.m. on April 11, 2006, "plaintiff awoke with a very tight chest and inability to get a meaningful breath." Id. Plaintiff pushed the emergency call button and Sergeant Gutjahr responded. Id. at 9-10. Gutjahr attempted to located plaintiff's inhaler but could not find it on the medication cart. Id.

When it became apparent that plaintiff's condition was worsening, Gutjahr called Nurse Waltz at home. Id. Waltz said that plaintiff would have to wait until 6 or 7 the next morning to see medical staff. Id. Approximately 20 minutes after Gutjahr called Waltz, plaintiff lost consciousness. Id. When plaintiff regained consciousness at around 3:30a.m., Gutjahr had placed an inhaler in his mouth. Id. at 11-12. Plaintiff was then escorted via ambulance to Waupun Memorial Hospital. Id. at 12.

In the ambulance, plaintiff was given a Duonebulizer breathing treatment. Id. Upon arriving at the hospital, plaintiff was given a second nebulizer breathing treatment and oral steroids to decrease swelling in the airways. Id. The treating physician at the hospital drew up a treatment plan which called for an Albuterol inhaler up to four times a days for ten days and 60mg of prednisone for seven days. Id.

Instead of providing the nebulizer as suggested by the emergency room physician, Nurse Gorske stated that it had been discontinued. Id. Nurse Gorske also questioned why

plaintiff had an empty inhaler in his cell when his inhaler had been seized. Id. Apparently, plaintiff had brought the inhaler that Dr. Suliene prescribed him to WCI when he was transferred. Id.

On May 14, 2006, "plaintiff began having chest pains upon trying to obtain a substantial breath, shortness of breath, wheezing, and a caving in of the neck and chest upon breathing in." Id. Plaintiff was taken to Waupun Memorial Hospital for treatment. Id. At the hospital, plaintiff was again diagnosed with severe asthma. Id. The emergency room physician, Dr. Syed Mohuiddin, recommended that plaintiff receive an albuterol nebulizer breathing mask up to four times daily, oral steroids and Tylenol with codeine. Id. Plaintiff was not provided with the albuterol nebulizer breathing mask or Tylenol with codeine because Nurse Waltz said that they had been discontinued. Id. However, on May 22, 2006, plaintiff saw that his nebulizer machine had been received on May 16, 2006. Id.

On May 25, 2006, plaintiff was seen by Dr. Larson for a "hunger-strike assessment." Id. When Larson asked plaintiff why he refused food, plaintiff stated that "he felt that Nurse Gorske had, by her actions, caused his asthma attack, because of her failure to procure prompt care and because her superiors were failing to respond." Id. Dr. Larson informed plaintiff that he "would make no room for negotiating" and that he was going to remove plaintiff's inhaler from his cell and have it placed on the medication cart to be controlled by corrections officers and given to plaintiff "as needed." Id. at 18.

Subsequently, on June 14, 2006, plaintiff asked to use his inhaler before taking a shower because showering is one of his "triggers" that causes his asthma to flare up. Id. The correctional officer in charge of plaintiff's inhaler refused to provide it to plaintiff, stating

that it did not look like plaintiff was having an asthma attack. Id. It was not until 45 minutes to an hour later that the officer retrieved plaintiff's inhaler for him. Id.

After his June 14, 2006, attack, plaintiff wrote to defendants Matthew Frank and Steve Casperson "explaining the health problems created by placing his inhaler under the officers' control." Id. at 20. On July 21, 2006, plaintiff received from defendant Grams a response to his letter to defendants Frank and Casperson. Id. Grams stated that Dr. Larson had plaintiff's inhaler under the control of a corrections officer for monitoring purposes. Id.

On June 5, 2006, plaintiff was told that a "force-feeding order would be sought from the circuit court." Id. On the same day, defendant Schueler ordered his subordinates to issue plaintiff a conduct report or formal disciplinary charges if plaintiff did not accept his food trays. Id. Plaintiff refused his dinner tray that night and was subsequently issued two conduct reports. Id. at 21.

On July 8, 2006, defendants Kingston and Larson sought and obtained an order from the Dodge County Circuit Court allowing them to force feed plaintiff. Id. Plaintiff was given a copy of this order on July 8, 2006. Id. On June 13, 2006, plaintiff filed a challenge to the court's order. Id. Thus, on June 16, 2006, the court ordered that a telephonic hearing be convened. Id. Plaintiff, however, did not receive a copy of this order until June 23, 2006. Id.

On June 21, 2006, Kevin Potter (attorney for the Wisconsin Department of Corrections) sent to the court "a letter asking that court reschedule the telephonic hearing slated for June 29 at 11:45a.m." Id. at 23. It was by virtue of this letter that plaintiff became aware of "an existing order from the court for a telephonic hearing." Id.

Plaintiff subsequently sent a letter to the court and Attorney Potter informing them that he never received a copy of the June 16, 2006, order. Id. Plaintiff also spoke to defendant Siedschlag about the missing order. Id. at 24. On June 23, 2006, Siedschlag returned the missing order. Id. When plaintiff asked where it had been, Siedschlag replied, "Don't worry you got it, didn't you?" Id. Siedschlag then acted as if he were opening a letter in plaintiff's presence. Id. When plaintiff inspected the envelope, he saw that "there was tape over the flap of the envelope...there was adhesive on the flap indicating it had been licked and sealed because pieces of the envelope had adhered to the flap during re-opening." Id.

Defendant Schueler was on vacation during the week of June 19 to June 23, 2006, and therefore Siedschlag retrieved plaintiff's missing mail from Schueler's mailbox. Id. Siedschlag must have had someone (either in the mail room or on the unit) help him obtain plaintiff's mail. Id.

Defendants obtained a court order "permitting the Waupun Health Services personnle to force feed" plaintiff. Id. at 24. Plaintiff's first experience with force feeding was extremely painful. Id. Thus, he "never allowed health staff to force fee him." Id. Instead, he began to voluntarily consume "whatever liquids HSU wished to administer." Id. For example, on June 25 and 26, 2006, plaintiff was given two to three cups of water and two cups of ensure nutrition drink twice daily. Id. at 25.

On June 27, 2006, plaintiff was told that Dr. Larson had changed his order and that plaintiff would "no longer be offered the chance to choose to voluntary accept and consume foods or water before each individual administration of food of water through a nasal-gastric tube." Id. Rather, "plaintiff would be strapped down twice a day and these administrations

would be forced upon him." Id. When the nasal-gastric tube was inserted into plaintiff, it was accidentally placed in his lungs which caused him to choke, throw up and experience painful headaches. Id.

For relief, plaintiff has requested injunctive relief and monetary damages. Id. He is suing defendants Gorske, Schrubbe, Kingston, Thurmer, Greer, Thorpe, Casperson, Frank and Waltz in their individual and official capacities. Id. Defendants Larson, Schueler, Doyle, HSU and Siedschlag are sued in their individual capacities only. Id.

**B. Analysis**

**1. Added Parties and Claims**

An initial comment is necessary with respect to the individuals identified as defendants in this case. To make someone a party, plaintiff must name the individual in the caption. Myles v. United States, 416 F.3d 551 (7th Cir. 2005). It is unacceptable for a court to add litigants on its own motion. Id.

Plaintiff filed this action on a standard § 1983 form and listed Mary Gorske, Dr. Charles Larson, Steven Schueler, Belinda Schrubbe, Mike Thurmer, Phil Kingston, Cynthia Thorpe, Jim Greer, Bureau of Health Services (BHS), Steve Casperson, Matthew J. Frank, Governor James Doyle, Gail Waltz and Bruce Siedschlag as defendants in the section labeled "Parties." (Compl. at 1-3). However, in the body of the complaint, plaintiff asserts claims against "defendant Muenchow" (Compl. at 14) and "defendant Grams" (Compl. at 20). Thus, if plaintiff wishes to add Muenchow and Grams as defendants, he may within 30 days of the date of this order submit an amended complaint naming such individuals in the caption. Plaintiff is hereby advised that the amended complaint supersedes the prior

complaint. See Duda v. Board of Ed. Of Franklin Park Public School District No. 84, 133 F.3d 1054, 1056 (7th Cir. 1998). That is, the amended complaint must incorporate the allegations set forth in the initial complaint. Id. Any matters not set forth in the amended complaint will be, in effect, withdrawn. Id.

At this time I will also address plaintiff's letter of September 14, 2006, in which he avers that: 1) defendant Siedschlag retaliated against him after he filed this complaint; 2) defendant Siedschlag's brother has retaliated against him; 3) he has been denied adequate access to legal materials at WCI; and 4) he has exceeded the $200.00 legal loan limit. (Pl.s' Letter of Sept. 14, 2006, at 1-2). It is unclear whether plaintiff wishes to add these claims to his complaint. Indeed, he states that the purpose of the letter is to inform the court "of the extreme retaliation [he has] suffered since the mailing of the complaint." Id. Moreover, to the extent plaintiff seeks to add new claims, it is unclear whether he is pursuing them against existing defendants or if he wishes to name additional parties. Therefore, plaintiff is again advised that he may within 30 days of the date of this order add these claims and any additional defendants to this action by filing an amended complaint in the manner described herein.

**2. Medical Care Claims**

Plaintiff avers that defendants delayed and denied him medical care for his asthma. To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429

U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez v. Peters, 111 F.3d 1364, 1373 (7th Cir. 1997)). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez, 111 F.3d at 1373 (citations omitted).

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). Here, plaintiff has indicated both that he suffered from a serious medical need and that defendants were deliberately indifferent to such need. Accordingly, Claims 1, 2, 3 and 4 state a claim under the Eighth Amendment.

Plaintiff also contends that defendants violated his constitutional rights by creating a future health problem. In particular, he avers that defendants withheld his inhaler and asthma medication when they knew it was likely that he would suffer an asthma attack in the future. The Eighth Amendment protects a prisoner not only from deliberate indifference to his or her current serious health problems but also from deliberate indifference to conditions

posing an unreasonable risk of serious damage to future health. Board v. Farnham, 394 F.3d 469 (7th Cir. 2005). Therefore, Claims 1, 2, 3 and 4 also state Eighth Amendment claims for deliberate indifference to plaintiff's future health.

**2. Retaliation**

Plaintiff submits that defendants retaliated against him for refusing to eat. Specifically, he asserts that defendant Schueler issued him a conduct report after he refused his dinner tray and defendants Kingston and Larson obtained a court order permitting them to force feed plaintiff. A plaintiff must plead three elements in order to state a claim for retaliation: he must "specif[y] a retaliatory action;" he must name the appropriate defendants; and he must "assert[] a constitutionally protected activity, the exercise of which caused the . . . retaliatory action." Hoskins v. Lenear, 395 F.3d 372, 275 (7th Cir. 2005). The plaintiff met this standard: he identified the receipt of conduct reports and the court order as the retaliatory action; he specified the relevant defendants (Schueler, Kingston and Larson); and he invoked is constitutional right to free speech. See id.; Lekas v. Briley, 405 F.3d 602, 614 (7th Cir. 2005) ("prisoner can sufficiently state a claim for relief when he alleges that prison officials issued baseless disciplinary tickets against him in retaliation for pursuit of administrative grievances"). Thus, Claim 5 states a claim for retaliation.

**3. Legal Mail and Access to the Courts**

Next, plaintiff avers that defendant Siedschlag and an unknown prison employee opened his legal mail outside his presence. Prisoners have a limited liberty interest in their mail under the First and Fourteenth Amendments. Procunier v. Martinez, 416 U.S. 396, 413-14 (1974). The inspection of personal mail for contraband is a legitimate prison

practice, justified by the important governmental interest in prison security. Gaines v. Lane, 790 F.2d 1299, 1304 (7th Cir. 1986). Further interference with an inmate's personal mail must be reasonably related to legitimate prison interests in security and order. Turner v. Safley, 482 U.S. 78, 89 (1987). Moreover, it is well established that prisoners have a First Amendment right to be free from certain interference with their "legal" mail. Wolff v. McDonnell, 418 U.S. 539, 577 (1974); see also Turner, 482 U.S. at 84; Kaufman v. McCaughtry, 419 F.3d 678, 685-86 (7th Cir. 2005). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. Wolff, 418 U.S. at 577; Bach v. People of State of Ill., 504 F.2d 1100, 1102 (7th Cir. 1974). Based on this, Claims 5 and 6 state legal mail claims.

Plaintiff also avers that Siedschlag and the unknown prison employee denied him access to the courts because they withheld his mail from him for approximately one week. Prisoners have a due process right of access to the courts and must be given a reasonably adequate opportunity to present their claims. Bounds v. Smith, 430 U.S. 817, 825 (1977). Such access must be effective and meaningful. Id. at 822. To state a claim for denial of access to the courts, plaintiff must "spell out, in minimal detail, the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence or prison conditions." Pratt v. Tarr, 464 F.3d 730, 732 (7th Cir. 2006)(internal citation omitted). Here, plaintiff has complained that, as a result of his mail being withheld, he was not aware that a telephonic conference concerning defendants' application for an order to force feed him had been scheduled. It is unclear whether such action caused the court to issue an order permitting defendants to feed plaintiff against his

will. Construing this doubt in plaintiff's favor, as I must at this stage, plaintiff may proceed on an access to the courts claim as stated in Claims 5 and 6.

**4. Conspiracy**

Plaintiff avers that defendant Siedschlag and an unknown prison employee conspired to intercept plaintiff's legal mail. It is enough in pleading a conspiracy merely to indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with. Hoskins v. Poelstra, 320 F.3d 761, 764 (7th Cir. 2003); see also Walker v. Thompson, 288 F.3d 1005 (7th Cir. 2002). Plaintiff has met these requirements. He identified the parties (Siedschlag and an unknown employee), the general purpose (seize plaintiff's legal mail) and approximate date (sometime during June, 2006). Thus, Claims 5 and 6 also state conspiracy claims.

**5. Excessive Force**

Plaintiff asserts that defendants used excessive force in force feeding him. The Eighth Amendment's Cruel and Unusual Punishments Clause prohibits "unnecessary and wanton infliction of pain" on prisoners. Hudson v. McMillian, 503 U.S. 1, 5 (1992). In cases involving the use of excessive force, the question is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Id. at 7. Factors in determining whether the use of force was wanton and unnecessary include "the need for an application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Id. (quoting Whitley v. Albers, 475 U.S. 312, 321 (1986)).

In this case, plaintiff states that he was strapped down twice a day and made to involuntarily receive food via a nasal gastric tube. It is unclear at this stage of the proceedings whether such action constitutes excessive force. Because I have been instructed to construe such doubts in plaintiff's favor, he may proceed on an excessive force claim as stated in Claim 7.

**6. Involuntary Medical Treatment**

Plaintiff maintains that he was involuntarily fed via nasal gastric tube. A competent person has a constitutionally protected liberty interest in refusing unwanted medical treatment. Cruzan v. Director, Missouri Dep't of Health, 497 U.S. 261 (1990); Sullivan v. Bornemann, 384 F.3d 372 (7th Cir. 2004). Thus, Claim 7 states a due process claim.

**7. Personal Involvement**

I note that plaintiff seeks to hold defendants Thurmer, Kingston, Greer, Casperson and Frank responsible for violating his Eighth Amendment right to receive adequate medical care. To state an Eighth Amendment claim, a plaintiff must allege the personal responsibility of the named defendant. Langston v. Peters, 100 F.3d 1235, 1237 (7th Cir.1996). Because these officials are not medical professionals, it is unclear whether they were personally responsible for denying plaintiff's requests for medical care, or whether they properly relied on the medical judgment of others. See Greeno v. Daley, 414 F.3d 645, 655-56 (7th Cir. 2005). As noted, district courts have been instructed to construe such doubts in favor of a pro se plaintiff. Thus, at this point, plaintiff may proceed against defendants Thurmer, Kingston, Greer, Casperson and Frank on an Eighth Amendment claim.

However, the complaint fails to state facts indicating Governor James Doyle's direct, personal involvement, as required by Gentry v. Duckworth, 65 F.3d 555, 561 (7th Cir. 1995). Nor has plaintiff provided any facts showing that the alleged violation of his constitutional rights occurred at Doyle's direction or with his knowledge and consent. Id. Indeed, the only place Doyle's name appears is in the caption and demand for relief. However, this is insufficient for purposes of stating a claim against Doyle. See Potter v. Clarke, 497 F.2d 1206, 1207 (7th Cir. 1974) ("Where a complaint alleges no specific act or conduct on the part of the defendant and the complaint is silent as to the defendant except for his name appearing in the caption, the complaint is properly dismissed, even under the liberal construction given to pro se complaints."). Therefore, plaintiff may not proceed on a claim against Governor Doyle.

## III. Motion for Temporary Restraining Order

Plaintiff seeks injunctive relief on several bases. First, plaintiff seeks an order directing defendants Larson and Schrubbe to take his inhaler from the corrections officer and deliver it to plaintiff. (Compl. at 27; Mot. for TRO at 1). Second, plaintiff desires an order requiring defendant Larson to rescind his order allowing the Waupun nurses to force feed plaintiff through a nasal-gastric tube. Id. Finally, plaintiff desires to have the disciplinary convictions expunged from his prison discipline records. (Compl. at 27).

The standards for a temporary restraining order and preliminary injunction are identical. Graham v. Med. Mut. of Ohio, 130 F.3d 293, 295 (7th Cir. 1997). When considering whether to grant a preliminary injunction, the court must first consider "whether the moving party has demonstrated: 1) a reasonable likelihood of success on the merits, and 2) no adequate remedy at law and irreparable harm if preliminary relief is denied." Aircraft

Owners & Pilots Ass'n v. Hinson, 102 F.3d 1421, 1424-25 (7th Cir. 1996)(internal citations omitted). If the moving party has demonstrated those items to the satisfaction of the court, then it must look at: 3) the irreparable harm the non-moving party will suffer if the injunction is granted balanced against the irreparable harm the moving party will suffer if the injunction is denied, and 4) the public interest, i.e., the effect that granting or denying the injunction will have on non-parties." Id. The Court of Appeals for the Seventh Circuit had adopted a sliding scale approach where the greater the movant's chances of success on the merits, the less he must show that the balance of hardships tips in his favor. Ty, Inc. v. Jones Group, 237 F.3d 891, 895-96 (7th Cir. 2001).

A review of the docket in this case indicates that plaintiff was transferred from WCI to CCI on November 13, 2006. When a prisoner who seeks injunctive relief for a condition specific to a particular prison is transferred out of that prison, the need for relief becomes moot. See Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1995); see also Henderson v. Sheahan, 196 F.3d 839, 848 n.3 (7th Cir. 2000). Thus, to the extent plaintiff requests desires an injunction ordering Larson and Scrubbe to deliver his inhaler and prohibiting Larson from force feeding him, his motion for temporary restraining order will be denied.

As to plaintiff's request to have his conduct reports expunged from his record, plaintiff has not shown that he lacks an adequate remedy at law. Indeed, plaintiff is proceeding on a claim that he was issued conduct reports in retaliation for refusing to eat. Moreover, he has not demonstrated a likelihood of success on this claim. Rather, all plaintiff has demonstrated at this point is that he was issued two conduct reports on June 5, 2006. Therefore, plaintiff's motion for an order directing defendants to expunge the conduct reports from his prison discipline record will be denied.

## IV. CONCLUSION

**For the foregoing reasons,**

**IT IS THEREFORE ORDERED** that plaintiff's motion for leave to proceed in forma pauperis (Docket #3) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiff's motion for temporary restraining order (Doc. #4) is **DENIED.**

**IT IS ALSO ORDERED** that plaintiff may file an amended complaint within 30 days of the date of service of this order if he wishes to add claims or new defendants to this action. The amended complaint must bear the docket number assigned to this case and must be labeled "Amended Complaint." The amended complaint must be complete in itself without reference to any prior pleadings. Plaintiff must file an original and two copies of the amended complaint.

**IT IS ALSO ORDERED** that the United States Marshal shall serve a copy of the complaint, the summons, and this order upon the defendant pursuant to Federal Rule of Civil Procedure 4.

**IT IS ORDERED** that defendants shall file a responsive pleading to the complaint.

**IT IS ORDERED** that the Secretary of the Wisconsin Department of Corrections or his designee shall collect from plaintiff's prison trust account the $330.00 balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the prisoner's trust account and forwarding payments to the clerk of the court each time the amount in the

account exceeds $10 in accordance with 28 U.S.C. § 1915(b)(2). The payments shall be clearly identified by the case name and number assigned to this action.

**IT IS ORDERED** that copies of this order be sent to the warden of the institution where the inmate is confined and to Corey F. Finkelmeyer, Assistant Attorney General, Wisconsin Department of Justice, P.O. Box 7857, Madison, Wisconsin, 53707-7857.

Plaintiff is hereby notified that he is required to send a copy of every paper or document filed with the court to the opposing parties or their attorney(s). Fed. R. Civ. P. 5(a). Plaintiff should also retain a personal copy of each document. If plaintiff does not have access to a photocopy machine, plaintiff may send out identical handwritten or typed copies of any documents. The court may disregard any papers or documents which do not indicate that a copy has been sent to each defendant or to their attorney(s).

Plaintiff is further advised that failure to make a timely submission may result in the dismissal of this action for failure to prosecute.

In addition, the parties must notify the Clerk's Office of any change of address. Failure to do so could result in orders or other information not being timely delivered, thus affecting the legal rights of the parties.

Dated at Milwaukee, Wisconsin, this 4 day of January, 2007.

/s
LYNN ADELMAN
District Judge