# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

CHRISTOPHER GOODVINE,
      Plaintiff,

v.                                          Case No. 06-C-0862

NURSE MARY GORSKE, DR. CHARLES LARSON,
CAPTAIN SCHUELER, BELINDA SCHRUBBE,
MIKE THURMER, PHIL KINGSTON, CYNTHIA THORPE,
JIM GREER, BUREAU OF HEALTH SERVICES,
STEVE CASPERSON, MATTHEW J FRANK,
NURSE GAIL WALTZ, BRUCE A SIEDSCHLAG,
and SGT SIEDSCHLAG,
      Defendants.

## DECISION AND ORDER

Plaintiff, Christopher Goodvine, a state prisoner at all times relevant, filed this pro se civil rights action pursuant to 42 U.S.C. § 1983. I screened plaintiff's complaint and, in a decision and order dated January 5, 2007, allowed him to proceed on First, Eighth and Fourteenth Amendment claims, as well as a § 1983 conspiracy claim. In a decision and order dated July 30, 2007, I screened plaintiff's amended complaint and also allowed him to proceed on the following claims: (1) an Americans with Disabilities Act (ADA) claim; (2) a legal mail claim against Bruce Siedschlag; and (3) a retaliation claim against William Siedschlag. Defendants filed two motions for partial summary judgment, and I granted summary judgment on plaintiff's ADA claim in a decision and order dated January 30, 2008.

Before me now is plaintiff's motion for partial summary judgment. Plaintiff asks me to grant summary judgment in his favor on the two remaining claims from his amended complaint, his legal mail claim against Bruce Siedschlag and his retaliation claim against William Siedschlag.

## I. FACTS

At all times relevant, plaintiff was an adult inmate incarcerated at Waupun Correctional Institution (WCI). Plaintiff is currently incarcerated at Green Bay Correctional Institution (GBCI). Defendant Bruce Siedschlag was employed by the Wisconsin Department of Corrections (DOC) during the relevant time period as a Corrections Program Supervisor at WCI. Defendant William Siedschlag was (and is) employed by the DOC as a Correctional Sergeant at WCI.[1]

In June 2006, plaintiff was a party to litigation pending in Dodge County Circuit Court. Plaintiff sent the court a motion to be heard on the matter, which was received by the court on June 13, 2006. (Affidavit of Christopher Goodvine [Goodvine Aff.], ¶¶ 34-35). On June 16, 2006, the court issued an order granting plaintiff's request for an evidentiary hearing and setting a telephonic hearing for June 29, 2006. (Goodvine Aff. ¶ 35, Ex. G). On June 19, 2006, defendants in the Dodge County litigation sent a letter to the court asking that the June 29, 2006 hearing be rescheduled. (Goodvine Aff. ¶¶ 36, 38). When plaintiff received a copy of the letter from defense counsel, he became aware of the court's order and realized he had not received a copy. (Goodvine Aff. ¶¶ 36, 38). On June 21, 2006, plaintiff wrote to Bruce and complained about the missing court order. (Goodvine Aff. ¶ 39). Bruce visited plaintiff's cell on June 22, 2006 and promised to "look for" the missing order. (Goodvine Aff. ¶ 40). On June 23, 2006, Bruce returned to plaintiff's cell and delivered the missing order, which was in its original envelope. (Goodvine Aff. ¶ 41).

---

[1] I normally refer to defendants as "defendant" and differentiate them by using their last name. However, the defendants against whom plaintiff seeks summary judgment are brothers and share the last name "Siedschlag." For clarity, I will depart from my usual custom and informally refer to these defendants as William and Bruce.

2

Plaintiff avers that the envelope had a yellow post-it attached to it with a note that it was to be forwarded to "Schueler," who was absent that week. (Goodvine Aff. ¶ 41). Plaintiff also affirms that it looked like the envelope had been opened and taped shut. (Goodvine Aff. ¶ 41). Plaintiff further avers:

> When I asked Bruce Siedschlag where the letter had been, he replied: "Don't Worry! You got it, didn't you?", refusing to tell me where it had been because he knew I wasn't on any additional mail monitors that would account for its lateness. He then pretended that he was ripping it down the side to open it. He mentioned that it wasn't so late because the order was "issued" ... "on the 16th ...", something only someone who had read the correspondence contained inside would know, because the case was sealed.

(Goodvine Aff. ¶ 42).

Bruce does not recall handling an envelope addressed to Christopher Goodvine from Dodge County Circuit Court Judge John R. Storck. (Affidavit of Bruce Siedschlag [Bruce Aff.], ¶ 12). However, he affirms, "If I did handle this mail, I would not have intentionally opened it outside the presence of Goodvine nor would I have intentionally withheld this mail from Goodvine." (Bruce Aff. ¶ 12). Bruce also affirms that plaintiff would have been notified with a non-delivery of mail form if any mail was withheld and he is not aware of a non-delivery of mail form sent to plaintiff concerning this. (Bruce Aff. ¶ 17). He states that he "acted professionally and treated all inmates and their mail in a consistent and fair manner" at all time during his employment, that he followed DOC guidelines, policies, and procedures at all times, and that at no time did he violate any rights afforded to plaintiff. (Bruce Aff. ¶¶ 18-20). Further, Bruce avers: (1) "At no time did I participate-in, condone, or approve of opening Goodvine's legal mail outside of his presence;" and (2) "At no time was I personally

involved in any of the allegations the plaintiff has raised in his civil complaint." (Bruce Aff. ¶¶ 6, 7).

In early July 2006, plaintiff filed an inmate complaint alleging, in part, that Bruce had opened and read his legal mail. On July 29, 2006 and August 8, 2006, William conducted searches of plaintiff's cell. Plaintiff asserts that these searches were conducted by William in retaliation for plaintiff's inmate complaint against Bruce. Plaintiff avers that William talked to him about his complaint against Bruce on July 29, 2006, and William told plaintiff that Bruce was "the wrong guy to mess with" and twice asked plaintiff for the envelope in question. (Goodvine Aff. ¶¶ 9-11). Plaintiff affirms that he was then taken to the law library and, when he returned, his cell had been "completely sacked."[2] (Goodvine Aff. ¶¶ 12-14). Other inmates told plaintiff that William had "hit" plaintiff's cell and they "heard him ransacking it." (Goodvine Aff. ¶¶ 13, 15).

Plaintiff further avers that William searched his cell again on August 8, 2006, while plaintiff was in the law library, and he removed plaintiff's Qur'an and prayer beads. (Goodvine Aff. ¶¶ 18, 21). Once again, another inmate saw William conduct the cell search and provided an affidavit regarding what he saw. (Goodvine Aff. ¶22).

In contrast, William avers:

> On or about July 29, 2006 and August 8, 2006, I conducted cell searches of Goodvine's cell. Although I do not recall if there was a specific reason each of these searches were done, cell searches are done any time an inmate leaves his cell in this Health Segregation Complex. In Goodvine's case, he was at the law library and I or another would have searched his cell.

---

[2] The timing of his trip to the law library, shortly after his second conversation with William, made plaintiff suspicious, and he took the envelope with him to the law library. (Goodvine Aff. ¶ 12).

4

(Affidavit of William Siedschlag [William Aff.], ¶ 5). William further affirms, "[a]t no time during my searches did I destroy or tamper with any of Goodvine's legal materials;" and "[a]t all times, I followed DOC guidelines, policies, and procedures." (William Aff. ¶¶ 7, 8).

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) requires a district court to grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." The mere existence of some factual dispute does not defeat a summary judgment motion; the dispute must be material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party bears the initial burden of demonstrating that he is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Then the burden shifts to the non-moving party to demonstrate that material factual disputes remain for trial. Id. Neither party "may . . . rest upon mere allegations or denials" but rather must introduce affidavits or other evidence to "set forth specific facts." Fed. R. Civ. P. 56(e). "Supporting and opposing affidavits shall be made on personal knowledge, . . . [not] conjecture." Palucki v. Sears, Roebuck & Co., 879 F.2d 1568, 1572-73 (7th Cir. 1989). When the moving party does not bear the burden of proof at trial, he can prevail on a motion for summary judgment by showing that there is an absence of evidence to support any essential element of the non-moving party's case. Celotex Corp., 477 U.S. at 322-23. However, where the moving party bears the burden of proof at trial, he can prevail only by proving every element of his case with evidence so compelling that no reasonable jury could

5

return a verdict for the non-moving party. See Anderson, 477 U.S. at 248; Select Creations, Inc. v. Paliafito America, Inc., 911 F. Supp. 1130, 1149 (E.D. Wis. 1995).

In evaluating a motion for summary judgment, the court must draw all inferences in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "However, [I am] not required to draw every conceivable inference from the record — only those inferences that are reasonable." Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991). Moreover, neither the "mere existence of some alleged factual dispute between the parties," Anderson, 477 U.S. at 247, nor the demonstration of "some metaphysical doubt as to the material facts," Matsushita Elec., 475 U.S. at 586, will sufficiently demonstrate a genuine issue of material fact.

### III. ANALYSIS

**1. Legal Mail Claim**

It is well established that prisoners have a First Amendment right to be free from certain interference with their "legal" mail. Wolff v. McDonnell, 418 U.S. 539, 577 (1974); see also Kaufman v. McCaughtry, 419 F.3d 678, 685-86 (7th Cir. 2005). Therefore, prison officials may only inspect, not read, certain types of legal mail in the presence of the inmate. Wolff, 418 U.S. at 577; Bach v. Illinois, 504 F.2d 1100, 1102 (7th Cir. 1974). For example, correspondence between an inmate and an attorney is deemed confidential and, therefore, must be opened in the presence of the inmate. Wolff, 418 U.S. at 577.

Repeated instances of a prisoner's legal mail being opened by prison officials outside of his presence are actionable. See Antonelli v. Sheahan, 81 F.3d 1422, 1431-32 (7th Cir. 1996) (allegations that legal mail was repeatedly opened and sometimes stolen stated First

6

Amendment claim); Castillo v. Cook County Mail Room Dep't, 990 F.2d 304, 307 (7th Cir. 1993) (allegations that two letters addressed to the plaintiff from the United States District Court and one from the Department of Justice which was marked "LEGAL MAIL-OPEN IN PRESENCE OF INMATE," were opened outside the presence of the plaintiff were neither legally nor factually frivolous).

In contrast, "[a]llegations of sporadic and short-term delays in receiving mail are insufficient to state a cause of action grounded upon the First Amendment." Zimmerman v. Tribble, 226 F.3d 568, 573 (7th Cir. 2000). In Zimmerman, the plaintiff detailed in his complaint one instance in which his mail was delayed and a letter his fiancee sent on November 7, 1997 was not received by him until December 1, 1997. Id. at 572-73. Even accepting his allegation as true, the court found that "the most that Zimmerman alleges is an isolated incident of mail that was untimely delivered." Id. at 573. The Seventh Circuit affirmed the dismissal of plaintiff's legal mail claim at screening. Id.

Plaintiff argues he is entitled to summary judgment on his legal mail claim because Bruce opened and read plaintiff's legal mail outside of plaintiff's presence and impeded plaintiff's access to courts. However, I am unable to determine as a matter of law that the envelope containing the court order was opened outside of plaintiff's presence or that plaintiff's First Amendment rights were violated. Plaintiff has presented the envelope itself as evidence and draws conclusions from its appearance. (Goodvine Aff. ¶¶ 41, 42; Plaintiff's Complaint, Ex. 67A). Plaintiff has also averred that Bruce revealed knowledge of the contents of the court order that he would not have known if he had not opened the envelope. (Goodvine Aff. ¶ 42). Nevertheless, there exist genuine issues of material fact that preclude summary judgment. For example, Bruce affirms that he has never participated

7

in, condoned or approved of the opening of plaintiff's legal mail outside of his presence. (Bruce Aff. ¶ 6). Also, the examination of a piece of physical evidence, such as the envelope, and the drawing of conclusions from its appearance are matters for trial. A reasonable jury could return a verdict for the defendant. Therefore, plaintiff has not satisfied his burden of showing that the evidence supporting his claims is so compelling that no reasonable jury could return a verdict for the defendant. See Select Creations, 911 F. Supp. at 1149 (citing Anderson, 477 U.S. at 248). This is particularly true when I draw all inferences in a light most favorable to the non-moving party. See Matsushita Elec., 475 U.S. at 587. Further, because summary judgment is not appropriate on plaintiff's legal mail claim, it is likewise precluded on his derivative access to the courts claim.

**2. Retaliation claim**

Plaintiff also asks me to grant summary judgment in his favor on his claim that William twice searched his cell in retaliation for plaintiff filing an inmate complaint against Bruce for the legal mail incident discussed above. In order to prevail on his retaliation claim, plaintiff must establish (1) that he was exercising a constitutionally protected right; (2) that William took adverse actions against him; and (3) that the adverse actions were motivated at least in part as a response to plaintiff's constitutionally protected action. See Springer v. Durflinger, 518 F.3d 479, 483 (7th Cir. 2008).

It is undisputed that plaintiff filed an inmate complaint against Bruce in early July 2006 and that his filing of the complaint is a constitutionally protected activity. It is also undisputed that William searched plaintiff's cell on both July 29, 2006 and August 8, 2006. However, there is a genuine issue of material fact regarding the animus behind William's searches, one of the elements necessary to prevail on a retaliation claim.

8

Plaintiff attempts to show that the searches were retaliatory with his own affidavit and affidavits from other prisoners regarding statements William made and the nature of his searches. (Goodvine Aff. ¶¶ 9-15, 18, 21, 22). Plaintiff refers to the searches as "hits" and characterizes the result as his cell having been "ransacked." (Goodvine Aff. ¶¶ 13, 15). In response, William has raised a relevant issue of material fact: whether retaliation for plaintiff's inmate complaint against Bruce was part of his motivation for searching plaintiff's cell. William avers that "cell searches are done any time an inmate leaves his cell in the Health Segregation Complex" and that his searches were carried out in accordance with the requirements of the Wisconsin Administrative Code. (William Aff. ¶¶ 5, 6). William further avers that he never destroyed or tampered with any of plaintiff's legal materials during the searches. (William Aff. ¶ 5).

Faced with the evidence currently before me, a reasonable jury could return a verdict in William's favor. Therefore, this matter cannot be resolved on summary judgment. See Select Creations, 911 F. Supp. at 1149 (citing Anderson, 477 U.S. at 248).

**IT IS THEREFORE ORDERED** that plaintiff's motion for partial summary judgment (Docket # 106) is **DENIED**.

Dated at Milwaukee, Wisconsin, this 5 day of February, 2009.

/s\
LYNN ADELMAN\
District Judge